Richard E. JULIS et al., Plaintiffs,

v.

CITY OF CEDAR RAPIDS, IOWA, a municipal corporation, et al., Defendants.

No. 72–C–31–CR.

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

Aug. 8, 1972.

Robert C. Gross, Iowa City, Iowa, for plaintiffs.

Asher Schroeder, Iowa Highway Commission, Ames, Iowa, C. Kenneth Cranston, U. S. Dept. of Transportation, Kansas City, Mo., Evan L. Hultman, U. S. Atty., Sioux City, Iowa, David F. McGuire, City Atty., Cedar Rapids, Iowa, for defendants.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on plaintiffs' complaint filed July 19, 1972, seeking a preliminary and permanent injunction restraining certain street construction work on Mt. Vernon Road in Cedar Rapids, Linn County, Iowa, and a declaratory judgment that such construction is in violation of the National Environmental Policy Act of 1969 (NEPA). Plaintiffs base their claim upon the failure of defendants to prepare an environmental impact statement as prescribed by NEPA.[1] A consolidat-

---

1. 42 U.S.C. § 4332(2)(C) provides in part: "The Congress authorizes and directs that, to the fullest extent possible: . . . (2) all agencies of the Federal Government shall— . . . (C) include in . . . major Federal action[s] significantly affecting the quality of the human environment, a detailed statement . . . on—(i) the environmental impact of the proposed action . . . ."

ed hearing pursuant to F.R.Civ.P. 65(a)(2) was held on July 26 and 27, 1972. The court has jurisdiction of the parties and the subject matter. 5 U.S.C. § 702, 28 U.S.C. § 1331.

The work, officially identified by the acronym TOPICS (Traffic Operations Program to Improve Capacity and Safety) #72–T–006, involves a total expenditure of $651,515.55, $313,089.88 being the federal contribution. The construction area encompasses fourteen blocks.[2] The undertaking primarily eliminates a bottleneck by widening a portion of an existing major traffic artery from two lanes to four lanes and includes traffic signal installations and a pedestrian overpass.

As noted above, NEPA requires the filing of an environmental impact statement for *"major Federal Actions significantly affecting the quality of the human environment."* (Emphasis added.) Therefore the threshold question for the court, involving a twofold determination, is whether the project is a "major federal action" and if "major", whether it significantly affects the quality of the human environment. Absent either element the Act does not apply.

Being of relatively recent origin (effective date January 1, 1970) the decisions interpreting specific provisions of the Act are scanty. From research of legislative history, little light has been shed on the meaning of the words "major federal action." See 1969 U.S.Code Cong. and Adm.News, p. 2751 et seq. Nor have the briefs of counsel been helpful. Generally the cases have been concerned with projects of such magnitude that the question is not raised. See Named Ind. Mem. of San Antonio Conservation Soc. v. Texas Hy. Dept., 446 F.2d 1013 (5 Cir. 1971) (Highway project ultimately crossing parkland involving cost of $12.6 million); Morningside-Lenox Park Association v. Volpe,

334 F.Supp. 132 (D.C.1971) (Interstate Highway involving cost of $95 million); Environment Defense Fund v. Corps of Eng. of the U. S. Army, 325 F.Supp. 728 (D.C.1971) (Construction of dam inundating 4,680 acres—cost of $14.8 million).

However, the inclusion of the term "major" raises the obvious inference that not every federal action was meant to be included. Congress evidently intended to exclude from consideration the myriad minor activities with which the federal government becomes involved.

■ The spectrum of federal actions affecting the human environment range from the manufacture and sale of an 8 cent stamp by the Postal Service to the construction of the Interstate Highway System by the Federal Highway Administration at an estimated cost of $76 billion and to the waging of the Viet Nam War by the Department of Defense. Webster's Third International Unabridged Dictionary defines "major" as ". . . greater in dignity, rank, importance, or interest: SUPERIOR . . . greater in number, quantity or extent: LARGER . . . notable or conspicuous in effect or scope: CONSIDERABLE, PRINCIPAL . . ." It is the view of the court that by using the term "major" Congress reasonably intended to limit the Act to those federal actions of superior, larger and considerable importance, involving substantial expenditure of money, time and resources.

The United States Department of Transportation Guidelines, which deal with implementing this section of NEPA, state what appear to be reasonable considerations to be used in determining whether a highway section represents a "major" action.

The following should be used to determine whether a proposal to construct or improve a highway section is a major action.

2. A second project, officially known as FAMS (Federal Aid Metropolitan System), will extend the improvement to the east an additional eight blocks. No con-tract has been let for this project and its cost including the Federal share does not appear in this record.

a. Highway sections entirely or generally on new location.

b. Major up-grading of an existing highway section resulting in a functional characteristic change (e. g., a local road becoming an arterial highway). Such changes usually result by adding lanes, interchanges, access control, medians, etc., and require extensive right-of-way acquisition and construction (grading, base, paving, bridges, etc.) which have the potential of significantly affecting the human environment.

Policy and Procedure Memorandum 90–1, App. F, 2 (1971).

 In applying these tests and a common sense meaning to the word "major" the court is of the opinion that the Mt. Vernon project is not a "major federal action." The construction does not create a new highway location nor does it represent a functional characteristic change in a section of the highway. The evidence is clear that Mt. Vernon Road is and has been since 1846 a major traffic artery in Cedar Rapids, handling much of the east-west traffic through the City. Traffic entering the city on Mt. Vernon Road from the east proceeds from 42nd Street along four lanes until 27th Street or Memorial Drive (the Eastern limit of the FAMS project) at which point it is funneled into two lanes. The two lanes continue to 10th Street and 5th Avenue, if heading northwesterly, or until 8th Street, if heading southwesterly, where the street again becomes four lanes.

The primary purpose of the project is to eliminate the "bottleneck". The improvement entails no extensive right-of-way acquisition. Only slivers of land up to 4½ feet wide were acquired from 10 abutting property owners. No one is displaced from his home. No parkland is disturbed. Federal expenditures are limited to approximately $300,000. For these reasons, placing this project in its proper federal perspective, the court is of the view that it is not a "major federal action" and therefore is outside the scope of NEPA.

Having made this determination, it would be unnecessary for the court to consider the project's effect on the human environment. However, since the bulk of the testimony in the case concerns this issue, the court will comment briefly. The plaintiffs' contention that the project will significantly affect the quality of the human environment stems from one fact—the widening of the road will lead to more traffic. This anticipated increase in traffic will in turn have the effect of changing the type of neighborhood adjacent to the road, increasing the amount of carbon monoxide, and increasing the level of noise.

No one doubts that the traffic along Mt. Vernon Road will increase. The Linn County Transportation Plan, plaintiffs' exhibit #2, predicts an increase from the present average daily count of 13,000 vehicles to a count of more than 20,000 vehicles in 1990. It is fair to say, however, that this increase can be anticipated whether the present project is completed or not. In viewing the confused Cedar Rapids street system, it is apparent that Mt. Vernon Road is the only east-west artery in the southeast section of the city. As the population of this area grows, increased use of the street is necessitated. The elimination of the present "bottleneck" will not be the cause of the increased traffic, but will facilitate the movement of present and future traffic.

The neighborhood near Mt. Vernon Road is mixed residential-commercial. Adjacent to the project are three schools, a hospital and a cemetery. It would be unwarranted to anticipate any substantial effect on the human environment due to the road improvement because the nature of the road is not substantially changed. Mt. Vernon Road has been a major artery for over a century. Representatives of the schools, hospital and cemetery favor the improvement and the evidence indicates that among residents of the area, supporters outnumber opponents. Plaintiffs have failed to prove by a preponderance of the evidence that the project

will significantly affect the human environment.

The court concludes that the TOPICS Project does not come within NEPA and the complaint should be dismissed.