**FAYETTEVILLE AREA CHAMBER OF COMMERCE AND INTERSTATE 95 COMMITTEE, Appellants,**

v.

**John A. VOLPE, individually and as Secretary of Transportation, et al., Appellees.**

**No. 71-2190.**

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1972.

Decided July 24, 1972.

Joseph O. Tally, Jr., Fayetteville, N. C. (Tally, Tally & Bouknight, Fayetteville, N. C., and Morris Chertkov, and Rowley & Scott, Washington, D. C., on brief), for appellants.

John R. Whitty, Asst. U. S. Atty., (Warren H. Coolidge, U. S. Atty., on brief), for appellees.

Before BOREMAN and BRYAN, Senior Circuit Judges, and WINTER, Circuit Judge.

BOREMAN, Senior Circuit Judge:

The Fayetteville Area Chamber of Commerce and the Interstate 95 Committee brought this action under § 10 of the Administrative Procedure Act, 80 Stat. 392, 5 U.S.C. § 702, asking the district court to review and set aside the defendants' selection and approval of a bypass location of Federal Interstate Highway Route 95 (hereafter "Interstate 95") around Fayetteville, North Carolina. However, the district court granted defendants' motion for summary judgment and this appeal followed.

The Federal-Aid Highways Act, 23 U. S.C. § 101 et seq., provides for a nation-

al system of interstate highways, with 90 per cent of the cost to be borne by the federal government. Pursuant to this Act, state agencies basically plan and select the roads to be constructed but such plans and selections must be specifically approved by the Secretary of Transportation (hereafter "the Secretary") before the federal subsidy is granted. 23 U.S.C. § 103(f). In the final analysis, therefore, the determination of the location of an interstate highway is with the Secretary.

Approximately ten years ago the State of North Carolina began to seriously consider locating Interstate 95 just east of Fayetteville rather than running it through the city along existing U. S. Highway 301[1] (hereafter "Highway 301") as desired by the appellants. The proposal of the bypass location of Interstate 95 aroused local interest and concern for the future existence of numerous travel-oriented businesses located along the corridor of Highway 301 in Fayetteville.

Consequently, the City of Fayetteville and Cumberland County, North Carolina, engaged an independent consultant to conduct a study, comparing the proposed bypass location and the suggested, partially elevated route along Highway 301 through the city, technically and economically. The consultant submitted a report recommending the alignment of Interstate 95 along existing Highway 301.

In 1966 the North Carolina State Highway Commission conducted a public hearing pursuant to Section 128(a) of the Federal-Aid Highways Act (23 U.S. C. § 128(a)), concerning the two recommended, alternative routes of Interstate 95 through the Fayetteville area. At this hearing, counsel for one of the appellants, the Fayetteville Area Chamber of Commerce, gave a thorough presentation urging the location of Interstate 95 along Highway 301 in Fayetteville. Thereafter, the North Carolina State Highway Commission requested approval by the Secretary of the bypass location, concluding that it would be cheaper to construct, would handle traffic more efficiently, minimize disruption during construction, and in the long run would not prejudice the economy of Fayetteville. In further compliance with Section 128(a) the North Carolina Highway Commission submitted with the request for approval of its chosen bypass route, a statement of economic justification for that route.[2]

In March 1968 the Secretary approved the bypass location of Interstate 95. Appellants petitioned the Director of Public Roads for reconsideration of the approval; this petition was denied. Accordingly, on June 7, 1968, the appellants instituted this action in the United States District Court for the District of Columbia. The case was subsequently transferred, in August 1970, to the United States District Court for the Eastern District of North Carolina for reasons not germane here. Summary judgment for the defendants was then granted.

I

Appellants contend that the Secretary's approval of the route of Interstate 95 around Fayetteville rather than the location along Highway 301 through the city "was arbitrary and contrary to law and not an exercise of sound discretion under law" since assertedly, among other things, (1) the Secretary gave inadequate consideration to the intent of Congress expressed in the Federal-Aid Highways Act that "local needs, to the extent practicable, suitable, and feasible,

---

1. Prior to the enactment of the Federal-Aid Highways Act, Highway 301 was a main artery for north-south bound traffic along the Eastern Seaboard. In recent years Interstate 95, on the whole, has replaced Highway 301 as a primary north-south route.

2. There is some indication in the record that neither the report of the North Carolina State Highway Commission nor the reported study prepared by the consultant for the City of Fayetteville and Cumberland County is entirely reliable.

shall be given equal consideration with the needs of interstate commerce," [3] and that "existing highways located on an interstate route shall be used to the extent that such use is practicable, suitable, and feasible," [4] in light of the decision in Arlington Coalition on Transportation, Arlingtonians for Preservation of Potomac Palisades et al., v. Volpe, 458 F.2d 1323 (4 Cir. 1972) [5]; (2) the Secretary improperly relied on an "appalling" statement of economic justification for the bypass location submitted by the North Carolina State Highway Commission; (3) the Secretary did not prepare an environmental impact statement as prescribed by Section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. § 4332(2)(C)); (4) the state appellees have not held the "design" hearing concerning the project, which is required by the Department of Transportation's Policy and Procedure Memorandum 20-8, § 6, 23 C.F.R., Part 1, Appendix A; and, (5) the state appellees have failed to fully comply with Section 128(a), as amended, of the Federal-Aid Highways Act.

## II

■ Appellants' first two claims are unpersuasive. The record, as a whole, appears to contain ample evidence that the Secretary gave adequate consideration to "local needs," the possible use of existing Highway 301 and the possible economic impact on the local economy resulting from the bypass location of Interstate 95.

## III

Appellants' claims with respect to the Secretary's failure to prepare and circulate an environmental impact statement and to the state appellees' failure to hold a "design" hearing were not raised in the district court but only in appellants' briefs on appeal and before this court in oral argument. Consequently, the record is quite inadequate to aid in the consideration of either claim.

■ The Department of Transportation's Policy and Procedure Memorandum 20-8, § 6, 23 C.F.R., Part 1, Appendix A, provides that the design hearing must be held *after* the route location has been approved and prior to the commitment of the state highway department to a specific design proposal. Here, approval of the route location has been given but there has been no request to the Secretary by the state highway department for design approval which request would logically constitute commitment to a specific design proposal. More importantly, it is manifest that a design hearing is not required to be held prior to or contemporaneously with route location approval by the Secretary, the agency action complained of in the instant case. Thus there appears to be no basis for this claim.

■ The appellees have conceded in their brief on appeal and at the bar of this court that an environmental impact statement should have been prepared and circulated in conjunction with the Secretary's approval of the bypass routing of Interstate 95 around Fayetteville, pursuant to Section 102(2)(C) of the National Environmental Policy Act and have assured us that this statement has been prepared and is now being circulated. However, there is no indication in the record that such action has been taken. Therefore, under the circumstances we think it appropriate to remand this question to the district court, jurisdic-

3. 23 U.S.C. § 101(b).

4. Id.

5. In *Arlington* this court noted that the Secretary had not accorded appropriate weight to the express declaration of Congress in Section 138 of the Federal-Aid Highways Act of 1968, 23 U.S.C. § 138, and Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C.A. § 1653(f), that a *special effort* should be made to preserve parklands. Here the appellants are unable to point to any Congressional intent that special effort be expended to utilize existing highways; Congress merely provided that such highways should be used when "practicable, suitable, and feasible."

tion to be retained until such time as the Secretary satisfies that court that there has been full compliance with the requirements of Section 102(2) (C).

## IV

■ Finally, appellants, though they did not raise the issue below or in their briefs on appeal, alluded in oral argument to the state appellees' failure to comply with Section 128(a), as amended, of the Federal-Aid Highways Act. Under 23 U.S.C. § 128(a) hearings must be held, or opportunity for such hearings must be afforded, with respect to the route of a proposed Federal-Aid highway by the state highway department concerned. When the 1966 public hearings as to the location of Interstate 95 through the Fayetteville area were held, the first full sentence of Section 128(a) required only that information be gathered at the hearings to aid in the consideration of the *economic* effects of that location.[6] In 1968 this section was amended to provide that *additional* information must be sought at such hearings to aid in the consideration of the social effects of the proposed location, its impact on the environment, and its consistency with the particular community's urban planning objectives and goals.[7]

Apparently, information only as to the *economic* effects of the proposed location of Interstate 95 around Fayetteville was sought at the location hearings in 1966. At first glance this appears inconsequential since those hearings were held prior to the amendment of Section 128(a); however, in Arlington Coalition on Transportation, Arlingtonians for Preservation of Potomac Palisades et al. v. Volpe, 458 F.2d 1323 (4 Cir. 1972), this court held that the requirements added to Section 128(a) in 1968 apply to a highway ongoing at the effective date of the amendment *if* the project has not reached that stage of completion at which the costs of altering or abandoning the proposed location would certainly outweigh whatever benefits might be derived therefrom. Accordingly, these questions are remanded to the district court for consideration and such further proceedings as may be necessary in light of the decision in *Arlington* and the views herein expressed.

Remanded.

6. 23 U.S.C. § 128(a):
(a) Any State highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town or village, either incorporated or unincorporated, shall certify to the Secretary that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic effects of such a location. Any State highway department which submits plans for an Interstate System project shall certify to the Secretary that it has had public hearings at a convenient location, or has afforded the opportunity for such hearings, for the purpose of enabling persons in rural areas through or contiguous to whose property the highway will pass to express any objections they may have to the proposed location of such highway.

7. 23 U.S.C. § 128(a), as amended:
(a) Any State highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town or village, either incorporated or unincorporated, shall certify to the Secretary that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic and social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community. Any State highway department which submits plans for an Interstate System project shall certify to the Secretary that it has had public hearings at a convenient location, or has afforded the opportunity for such hearings, for the purpose of enabling persons in rural areas through or contiguous to whose property the highway will pass to express any objections they may have to the proposed location of such highway. Such certification shall be accompanied by a report which indicates the consideration given to the economic, social, environmental, and other effects of the plan or highway location or design and various alternatives which were raised during the hearing or which were otherwise considered.