### FAYETTEVILLE AREA CHAMBER OF COMMERCE, Plaintiff,

### Interstate 95 Committee, Appellant,

### v.

### John A. VOLPE, Individually and as Secretary of Transportation, et al., Appellees.

### No. 74–1530.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1974.

Decided May 5, 1975.

J. O. Tally, Jr., Fayetteville, N. C. (Tally & Tally; Morris Chertkov, Washington, D. C., Dwight W. Allen, Fayetteville, N. C., on brief), for appellants.

Jack B. Crawley, Jr., Asst. U. S. Atty. (Thomas P. McNamara, U. S. Atty., Robert Morgan, Atty. Gen., James B. Richmond, Asst. Atty. Gen., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This case comes to us after remand in 463 F.2d 402 (4th Cir. 1972).[1]

When the matter was first here, we partially affirmed and remanded for further consideration and such proceedings as might be necessary with respect to two specific facets of the case: (1) the filing of an environmental impact statement (EIS) under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4332(2)(C), and (2) compliance with a part of the Federal-Aid Highways Act, 23 U.S.C. § 128(a). NEPA was enacted after this highway project was well along, and, in the first appeal of this case, it was conceded that an environmental impact statement should have been prepared and circulated in conjunction with the approval of the bypass routing. Also, after the project had commenced and public hearings had been held, 23 U.S.C. § 128(a) was amended.[2] As initially applied to this bypass, § 128(a) required public hearings and consideration of the economic effects of the location of the bypass. As amended in 1968, additional information to be sought at such hearings is that to aid in the required certification indicating the consideration of the social effects of the proposed location, its impact on the environment, and its consistency with the particular community's urban planning and goals. A 1970 amendment provided for report of various alternatives raised during the hearing or which were otherwise considered as well as other matters.

The plaintiffs-appellants contend that the preparation of environmental impact statements is a non-delegable duty which must be performed solely by a responsible federal agency and, assuming such is not the case, participation in the preparation of the EIS by the North Carolina Transportation Department is impermissible because the head of the department was committed to the bypass location; that the approval of the final EIS by the U. S. Department of Transportation was not based on substantial good faith review; that an alternate route did not receive proper consideration; and that their request for an evidentiary hearing should have been granted in order to prove the decision of the U. S. Department of Transportation on the bypass route was arbitrary and not in accordance with law. We do not accept these contentions and affirm.

A more detailed statement of the background of the case is made in our first opinion, 463 F.2d 402. Following remand, the district court, by a series of orders commencing on August 20, 1972, properly insured that the remand was complied with.

A draft EIS had been commenced prior to the remand, the appropriate state and federal authorities cooperating in its preparation. The first draft was dated December 29, 1971, and was cleared for circulation January 3, 1972. Following the orders of the district court, a revised draft impact statement was prepared and cleared for circulation in May 1973. It was filed with the district court May 15, 1973 and was available at the public hearing subsequently referred to.

After the revised draft environmental impact statement had been circulated and filed with the district court, and after due public notice, a public hearing was held on July 16, 1973. This was a combined design and location hearing. At this hearing, everyone interested was given the opportunity to present his views concerning the design and location of the bypass and also the environmental

1. We note we have received an unsolicited *ex parte* communication giving the results of what was apparently a local poll on the location of the bypass. Of course it was not considered in arriving at our decision.

2. We held in Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323 (4th Cir. 1972), that 42 U.S.C. § 4332(C) and 23 U.S.C.

§ 128(a) as amended in 1968 might apply to ongoing highway projects. The provision providing for a report on the consideration given alternatives is not a part of the 1968 amendment to § 128(a), but is § 135(a) of P.L. 91–605 of the Federal Aid Highway Act of 1970, the 1970 amendment to § 128(a).

and other effects. Included among the witnesses at the public hearing were two experts offered by the plaintiffs who gave evidence concerning environmental and economic aspects of "the highway project in question." The hearing was attended not only by responsible officials of the State Highway Department but also by the division engineer and area engineer of the Federal Highway Administration and its regional attorney. At the hearing, a full airing of the bypass route and two alternate routes following U. S. 301 was had.[3]

Following the public hearing, opportunity was given to supplement the record, and the plaintiffs availed themselves of this opportunity.

The State Highway Department completed its work on the final EIS and submitted it to the Federal Highway Administration on August 24, 1973, and on that date the division office of the Federal Highway Administration submitted the statement to its regional office. The regional office accepted the statement on August 27, 1973, and forwarded it to its Washington office, where the final statement was accepted on August 30, 1973 and transmitted to the Department of Transportation. The Department of Transportation accepted the final statement on September 17, 1973 and transmitted it to the Council on Environmental Quality on that date. The required 30-day waiting period having expired, the bypass location, on request, was approved by the Department of Transportation on October 20, 1973.

The district judge had before him the entire administrative record when he considered the defendants' motion for summary judgment. The action of the district judge in requiring the full record was in accordance with the decision in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), "that review is to be based on the full administrative record

that was before the Secretary at the time he made his decision." 401 U.S. 402; 420, 91 S.Ct. 814, 825. In a memorandum decision, the district court correctly stated the standard of review as follows:

". . . the court has made a 'thorough, probing, in-depth review' of the additions made to the administrative record submitted by the defendants subsequent to remand as required by *Overton Park,* supra; it has reviewed the agency decisions on the merits to determine if they are in accord with NEPA as required by Conservation Council of North Carolina v. Froehlke, 473 F.2d 664 (4th Cir. 1973), and Appalachian Power Company, et al. v. Environmental Protection Agency, 477 F.2d 495 (4th Cir. 1973); and has undertaken to determine if the Secretary of Transportation inadequately explained his decision, all with the view to determining whether the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'. Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)." (footnote 1 omitted)

At this point, we note that in Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), the court has stated that in applying the standard of review set out in 5 U.S.C. § 706(2)(A) ". . . the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

The claim that the federal and state cooperation in the preparation of the environmental impact statement was an impermissible delegation of authority on the part of the Federal Highway Administration is not well taken. The statute, 42 U.S.C. § 4332(C), requires "a detailed statement by the responsible offi-

---

**3.** The record also shows the federal and state authorities considered two variations of each of the two U. S. 301 alternate routes. So, in fact, at least six alternatives were considered, including a "do nothing" alternative.

cial." Even before the decision of this court in *Arlington Coalition on Transportation* (it being remembered that NEPA was enacted subsequent to the initial public hearings in this matter), the responsible federal officials, in conjunction with the state officials, had commenced the preparation of a draft impact statement, and the continued cooperation, commencing in 1971, of state and federal authorities in the preparation of the first and second draft environmental impact statements and the final statement is supported by the record. Not only did the federal officials review with care from time to time the work on the preparation of the statement, the physical preparation of which was largely handled by the state authorities, the record also includes such activity by the federal officials as field inspections, erosion control recommendations, directions to the state to include appropriate consideration of the comments from the Council on Environmental Quality, joint meetings to determine the design concept, and progress meetings to review the draft statement. And we do not mention here most of the matters of detail which the record shows were jointly considered by the state and federal authorities in deciding upon the location and design of the Fayetteville bypass, as well as the preparation of the environmental impact statement.

While it is true that it has been held that if the EIS were only "reviewed as to form" by the responsible federal agency, see Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2nd Cir. 1973), the preparation of the report in its entirety by a delegate of the federal agency might fatally infect the agency action complained of, such question is not before us.[4] The district judge found good faith participation by responsible federal officials in the preparation of the two draft environmental statements and the final EIS, and our

examination of the record confirms his finding. The record discloses a joint participation by federal and state officials in the bypass project and in the preparation of both draft statements and the final EIS, even to matters of such nice minor detail as the location of graves. Two circuits at least have considered this question with respect to the Federal-Aid Highways Act and compliance with it under Department of Transportation Policy and Procedure Memorandum 90–1, 23 CFR, Part I, Appendix A, and found environmental impact statements for the location of federal-aid highways sufficient when prepared under like circumstances. In Iowa Citizens for Environmental Quality, Inc. v. Volpe, 487 F.2d 849 (8th Cir. 1973) (one judge dissenting), with a fact situation very nearly identical to that existing here, the court approved an EIS by the Iowa highway department prepared under Memorandum 90–1 as above mentioned. On similar facts, in Citizens Environmental Council v. Volpe, 484 F.2d 870 (10th Cir. 1973), a unanimous court approved an EIS where the "Secretary of Transportation did not simply 'rubber stamp' the State's work. He reviewed it and adopted it as its own." In Life of the Land v. Brinegar, 485 F.2d 460 (9th Cir. 1973), the court approved an EIS physically prepared by a private consulting firm at the instance of the Federal Aviation Agency, when ". . . agency officials actively participated in all phases of the EIS preparation process." 485 F.2d 460, 467. And, in our circuit, the District of Maryland, in Movement Against Destruction v. Volpe, 361 F.Supp. 1360 (D.Md.1973), aff'd per curiam, 500 F.2d 29 (4th Cir. 1974), approved an environmental impact statement against the argument that it should not have been drafted by the Interstate Division of Baltimore City, a division of the State Highway Administration of Maryland. The court there found that responsible federal authorities had participated in

---

4. Some language in *Iowa Citizens for Environmental Quality* indicates that if the question in *Greene County* were squarely put, the decision of the court might not be the same as the Second Circuit. See esp. p. 854–5 and n. 3. We note this to emphasize we express no opinion on the question of delegation on the facts of the *Greene County* case.

the preparation of the statement through the federal district engineer and had monitored the development of plans for an expressway for three years. Parenthetically, we note that the Federal Highway Administration has been involved in almost every aspect of the Fayetteville bypass since at least 1964.

The allied complaint, that, if there is no impermissible delegation, the participation in and physical preparation of the EIS by the North Carolina authorities is none the less not allowable, is likewise not well taken. It is well to note here that the bypass location for the road had been fixed after public hearings even before the passage of NEPA, much less the amendments of 23 U.S.C. § 128(a) in 1968 and 1970. Someone has to approve the route of every highway. In the case of federal-aid highways, the initial decision is made by the responsible state authorities subject to approval by the federal authorities. This is precisely what was done in this case. The fact that a state highway official has made an administrative decision as to the location of a federal-aid highway does not disqualify his department from taking part in the preparation of an environmental impact statement. In the face of similar objections, the Ninth Circuit, in *Life of the Land*, and the Eighth Circuit, in Environmental Defense Fund v. Corps of Engineers, U. S. Army, 470 F.2d 289 (8th Cir. 1972), have indicated that test of compliance with § 102 of NEPA, 42 U.S.C. § 4332, "is one of good faith objectivity rather than subjective impartiality." 470 F.2d 289, 296. We adopt this reasoning.

Nothing in the record suggests other than good faith objectivity on the part of any official, state or federal. The fact that they have come to different conclusions than the plaintiffs desire is no reason to upset their decision.

We are thus of opinion that where responsible federal and state officials participate in the preparation of an environmental impact statement for a federal-aid highway, the statement being prepared in accordance with the applicable statutes and regulations as in the case here, there has been no violation of 42 U.S.C. § 4332(C) because of participation by the state officials.

█ The contention that the approval by the Department of Transportation of the final EIS was not based on substantial good faith review has been largely covered in the discussion just above. Suffice it to say here that when the federal officials have actively participated in the preparation of the statement, it is hardly possible to claim they have not reviewed it. In all events, the record supports a detailed review as well as participation. If the claim may be taken to mean any lack of good faith, the record is simply devoid of the slightest evidence to support it.

The next claim of the plaintiffs is that a third alternative route was considered by the State Highway Department and not submitted to the federal authorities. They say that this violates 42 U.S.C. § 4332(C)(iii) and also 23 U.S.C. § 128(b).[5] Section 4332(C)(iii) provides that a statement on alternatives to the proposed action be included in the EIS. Section 128(a) provides that the state should report to the federal authorities various alternatives which were raised during the public hearing or which were otherwise considered.

█ Some time after the public hearing of July 16, 1973, a person described by the appellants as a respected, technically qualified, and long-time resident of Fayetteville submitted to the State Highway Department an alternate route to either the bypass or the U. S. 301 location. At this point, it should be

---

**5.** 42 U.S.C. § 4332(D) also concerns alternatives.


remarked that the routes considered at the public hearing were the bypass which was ultimately approved, two U. S. 301 routes, and a "do nothing" alternative, which would mean not building the road at all.[6] See PPM 90–1, App. 3, para. 2(d). The proposed intermediate location would have gone between the bypass route, which went as far as five miles from the city, and the U. S. 301 route. Exactly when this proposal was made by the citizen to the State Highway Department is not shown by the record. It was discussed in an internal memorandum within the State Highway Department dated September 21, 1973, which refers to an aerial mosaic submitted September 5, 1973, which is the first date in the record referring to the intermediate route. So, a fair assumption is the suggestion was made to the State Highway Department during the first few days in September. In all events, we know that the citizen, although a resident of Fayetteville, did not bring the matter up in the public hearing on July 16, 1973, when the very subject of his suggestion was being publicly discussed at a meeting called for that purpose. The State Highway Department did as it should have done and examined the suggestion on its merits. It concluded, in the internal memorandum, as compared with the bypass route, the intermediate route had one advantage as against 13 disadvantages and recommended that it not be given further consideration. In addition to the enumerated disadvantages, the intermediate suggestion would have meant a delay of about four more years in a project which at that time had already suffered delays from the public hearings of 1966 until 1973. No cases are found construing the provision for the consideration of alternatives in 23 U.S.C. § 128(a). Section 4332(C)(iii), in its provision for alternatives, has been considered in *Life of the Land, Iowa Citizens for Environmental Quality,* and Natural Resources Defense Council v. Morton, 148 U.S.App. D.C. 5, 458 F.2d 827 (1972), and Environ-

mental Defense Fund v. Corps of Engineers, U. S. Army. Sometimes the review has been phrased as going to subsection (D) of the statute rather than (C)(iii), but always construing the provisions as to alternatives. In this circuit, *Movement Against Destruction* has considered the same matter. All these cases construe the provisions for consideration and discussion of alternatives as subject to a construction of reasonableness. We see no reason the similar provisions of § 128(a) should not be construed the same, and we so construe them. The gist of all of the opinions is that an infinite variety of alternatives is permissible in almost every administrative decision of this nature, which should be especially true here when it is considered that the administrative authorities have considered a "do nothing" alternative. This being so, there must be an end to the process somewhere or no federal-aid highway would ever be built. So long as there are unexplored and undiscussed alternatives that inventive minds can suggest, without a rule of reason, it will be technically impossible to prepare a literally correct environmental impact statement and literally impossible for a state highway department to report, in compliance with § 128(a), the final decision on the route of a federal highway to the federal authorities. We think that what NEPA, 42 U.S.C. § 4332(C)(iii), demands is the "study, development, and description of reasonable alternatives," Environmental Defense Fund v. Corps of Engineers, U. S. Army, 470 F.2d at p. 297, that is to say, "realistic alternatives that will be reasonably available within the time the 'decision making' official intends to act." *Movement Against Destruction,* 361 F.Supp. at p. 1388. We think the language from *Natural Resources Defense Council,* approved in *Iowa Citizens for Environmental Quality,* should be applicable here to the alternative provisions of § 128(a) and § 4332(C)(ii) alike: ". . . if this requirement is not rubber, neither is it iron. The statute must be construed in

---

**6.** See footnote 3, p. 6.

the light of reason if it is not to demand what is, fairly speaking, not meaningfully possible, given the obvious, that the resources of energy and research—and time—available to meet the Nation's needs are not infinite." 487 F.2d 849, 852. If the state highway authorities in this case had summarily rejected the suggestion for the intermediate route made by the citizen who did not bring up his suggestion at the public hearing, it might very well be accused of being arbitrary. And, having considered the suggestion, and concluded that its numerous disadvantages as weighed against its one advantage over the route chosen, coupled with a four-year time delay in an already delayed project, caused it not to warrant further consideration, it was quite within the bounds of reason for the suggestion not to be reported to the federal highway authorities under § 128(a) and not to be discussed in the final draft of the EIS (even if it were received by the state authorities in time to do so, which is doubtful).

■ Plaintiffs' request for an oral hearing, which was denied by the district court, is also without merit. The district court had before it the full administrative record. The record discloses the factors which were considered by the Department of Transportation in the approval of the route and in the submission of the environmental impact statement. All of the matters requiring consideration by 42 U.S.C. § 4332(C) were considered by the Secretary. The only concrete argument the plaintiffs make for granting an oral hearing is that the Secretary has not agreed with the conclusions reached by their expert witnesses. The most that can be said for their position is that the federal authorities did not agree with the conclusions reached by the plaintiffs' witnesses. No reason is given to justify departure from the standard laid down in Camp v. Pitts that ". . . the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." No fact is called to our atten-

tion to show the Secretary did not act "within the scope of his authority" or that his action was not "justifiable under the applicable standard." *Citizens to Preserve Overton Park*, 401 U.S. p. 420, 91 S.Ct. p. 825.

All in all, we are of opinion the actions of the Secretary with respect to the location of the Fayetteville bypass were neither arbitrary nor capricious nor an abuse of discretion, nor otherwise not in accordance with law; rather, they were studied, deliberate, well within his discretion, and in accordance with the applicable statutes and regulations.

Accordingly, the judgment of the district court is

Affirmed.