The UNIVERSITY OF MARYLAND

v.

Max CLELAND, et al.

Civ. A. No. M–77–1011.

United States District Court,
D. Maryland.

June 2, 1981.

Frederick G. Savage, Asst. Atty. Gen., Baltimore, Md., for plaintiff.

Sandra M. Schraibman and Shalom Brilliant, Attys., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Presently pending before the court is the defendants' Motion for Summary Judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

*I. Factual Summary*

This controversy involves the manner in which the Veterans' Administration (VA) implemented the 1976 amendment to 38 U.S.C. § 3101(a). That statute generally provides that benefit payments available under VA programs are not assignable. In 1976, § 3101(a) was amended specifically to prohibit certain financing practices relating to educational assistance benefits issued to eligible servicemen.

The University of Maryland operates an overseas program, through which it provides college credit instruction to United States military personnel. Since the University's courses meet the qualifications set forth in 38 U.S.C. § 1772 *et seq.*, eligible military personnel enrolled in those courses are entitled to full reimbursement of tuition costs from the VA as a part of their VA in-service educational benefits.

Prior to the 1976 amendment to § 3101(a), the University of Maryland entered into "tuition financing arrangements" with various military personnel. Pursuant to these arrangements, the personnel signed agreements to pay tuition to the University, designated the University as the addressee for their VA benefit checks, and executed powers of attorney authorizing the VA to negotiate their benefit checks. Under that system, the University received benefit checks directly from the VA and then negotiated them pursuant to the individual powers of attorney.

Although the VA never specifically authorized that type of "tuition financing arrangement," its official stance regarding such an "arrangement" was ambiguous. This court has previously held that the VA's ambiguity was conscious, and therefore indicated tacit approval of such "arrangements." [1]

Effective December 1, 1976, § 3101(a) was amended by Congress to prohibit "tuition financing arrangements" of the type set up by the University of Maryland. As amended, § 3101(a) stated, in pertinent part, as follows:

"For the purposes of this subsection, in any case where a payee of an educational assistance allowance has designated the address of an attorney-in-fact as the payee's address for the purpose of receiving his or her benefit check and also executed a power of attorney giving the attorney-in-fact authority to negotiate such benefit check, such action shall be deemed to be an assignment and is prohibited."

Pub.L. 94–502, Title VII, § 701, Oct. 15, 1976, 90 Stat. 2405.

Prior to the December 1, 1976 effective date of this amendment, the University discontinued its implementation of the "tuition financing arrangements." At that point, however, the University had already entered into "tuition financing arrangements" with military personnel who had enrolled in courses and received credit, but for whom a VA benefit check had not yet been issued.

In order to implement the 1976 amendment to § 3101(a), the VA initially issued DVB Circular 20–76–84 which indicated that educational institutions would be prohibited from negotiating any VA benefit checks after December 1, 1976, regardless of when the underlying powers of attorney were executed or when the course work was completed.

The University thereafter filed this suit seeking (1) an order that the VA disburse checks not yet mailed to the University in order that they could be negotiated, and (2)

---

1. See this court's Memorandum and Order dated January 23, 1978, pp. 4–5.

an order allowing negotiation of checks pertaining to pre-December 1, 1976 "arrangements." During the pendency of this suit, Congress passed legislation which allowed the Administrator of the VA to award equitable relief under § 3101(a).[2] Thus the Administrator was granted authority to allow educational institutions to negotiate benefit checks in their possession which were received under a power of attorney created prior to December 1, 1976, for tuition pertaining to course work to be completed on or before June 30, 1977. The VA granted the University equitable relief as to checks in the University's possession. The University maintains, however, that approximately $500,000 in tuition remains unpaid, because the VA either failed or refused timely to mail out numerous benefit checks relating to pre-December 1, 1976 powers of attorney.

On defendants' Motion to Dismiss which was originally filed in this case, this court initially held that 38 U.S.C. § 211(a) precluded review of the challenged administrative action. On appeal, however, the Fourth Circuit held that § 211(a) applies only to a review of individual benefit claims and characterized the plaintiff's claim in the present case as follows:

"[T]his is not an individual benefits case. The issue here is whether the Administrator is attempting to expand the limits of his power beyond that granted by Congress in the amendment to § 3101(a). The substance of the University's argument is straightforward. Had the Administrator mailed these benefit checks in a timely manner the checks would have been in the University's possession prior to December 1, 1976, and they would have been negotiable by it under the congressional direction. Moreover, the pronouncements of the Administrator (A.D. No. 993 and DVB 20–73–5) indicated that the Administrator would cooperate in the financing plan. The University relied justifiably on those pronouncements. Now, the University alleges the Administrator is acting arbitrarily, beyond the scope of his powers."

*University of Maryland v. Cleland*, 621 F.2d 98, 100–101 (4th Cir. 1980). Therefore, this case was remanded for a determination of the merits.

On remand, the defendants filed a new motion to dismiss or to transfer this action to the Court of Claims. The defendants contended that the plaintiff's claim involved an action for damages in excess of $10,000, and was within the exclusive jurisdiction of the Court of Claims pursuant to 28 U.S.C. §§ 1346(a)(2) and 1491. The plaintiff, however, argued that the action was one seeking either a writ of mandamus or declaratory and injunctive relief. As stated by plaintiff's counsel in oral argument on that motion, any claim for damages alleged in the complaint was lodged only against VA officials in their individual capacities and therefore would not come within the exclusive jurisdiction of the Court of Claims.

In denying defendants' motion, this court said:

"The court finds that the plaintiff's complaint principally alleges a non-monetary cause of action which is properly

2. The pertinent portion of that statute is as follows:

"(c)(1) Where an educational institution— (A) has in its possession veterans' or eligible persons' benefit checks made payable to a veteran or eligible person and mailed to such educational institution for a course offered (i) under the provisions of subchapter VI of chapter 34 of title 38, United States Code, or (ii) at a location not in a state under the provisions of section 1676 of title 38, United States Code, and which course was commenced by such veteran or eligible person prior to December 1, 1976, and completed not later than June 30, 1977; and

(B) holds a power of attorney executed by the veteran or eligible person prior to December 1, 1976, authorizing the educational institution to negotiate such benefit check, the Administrator may where the Administrator finds there is undue hardship on such educational institution, provide such relief as the Administrator determines equitable pursuant to regulations which the Administrator shall prescribe."

Pub.L. 95–202, § 305(c)(1), November 23, 1977, 91 Stat. 1444.

before this court. Although the dispute here involves funds, in that the case revolves around government benefit checks, the central issue is not properly characterized as a monetary claim. The University is clearly entitled to payment for overseas courses provided to servicement. Similarly, the VA is obligated to issue benefit checks for course work undertaken by eligible servicemen. The only question, and the only real issue in this case, is whether the VA should mail the benefit checks in issue directly to the University so that they may be negotiated by the University under pre-December 1, 1976 powers of attorney. Viewed in this light, the plaintiff's complaint presents challenges to the VA's implementation procedures which could warrant either declaratory or injunctive relief and constitutes a cognizable non-monetary claim for relief which is properly within this court's jurisdiction pursuant to 28 U.S.C. § 1331."

*University of Maryland v. Cleland*, 504 F.Supp. 351 at 356 (D.Md.1980).

## II. Legal Analysis

The defendants have filed a motion for summary judgment on the grounds that this court lacks jurisdiction over the subject matter of this action and that the plaintiff's complaint fails to state a claim upon which relief can be granted.

### A. Subject Matter Jurisdiction

Before addressing the defendants' specific arguments relating to jurisdiction, the court believes it helpful to clarify the present jurisdictional posture of this case. On remand, the Fourth Circuit stressed that the issue in this case is whether the Administrator of the VA was either attempting to expand the limits of his power beyond that granted by Congress in the amendment to § 3101(a), or was acting arbitrarily beyond the scope of his powers. Viewed in this light, the Fourth Circuit found this case analogous to the case presented to the Sixth Circuit in *Wayne State University v. Cleland*, 590 F.2d 627 (6th Cir. 1978). Therefore, the Fourth Circuit held that 38 U.S.C.

§ 211(a) did not preclude review in the present case. Rather the court "agree[d] with the approach adopted in *Wayne State* and [found] the rationale applicable here." *University of Maryland v. Cleland*, 621 F.2d 98, 101 (4th Cir. 1980).

Although not directly addressed in the Fourth Circuit opinion in the present action, the *Wayne State* court specifically noted that, as a general matter, administrative decisions come within the § 1331 jurisdiction of the courts and are subject to judicial review under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*, except to the extent otherwise provided by statute. *Wayne State University v. Cleland, supra.* Since the present action alleges that the VA Administrator acted beyond the scope of his authority, judicial review of the plaintiff's claims is not precluded by 38 U.S.C. § 211(a), and jurisdiction exists under § 1331 to review his administrative actions under the standards set forth in the APA. Specifically, 5 U.S.C. § 702 provides, in pertinent part, as follows:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."

In this court's Memorandum and Order dated November 28, 1980, *University of Maryland v. Cleland*, 504 F.Supp. 351, the issue decided was whether exclusive jurisdiction over this action existed in the Court of Claims. As previously set forth, the court ruled that the plaintiff's complaint principally alleges a non-monetary cause of action and properly falls within this court's jurisdiction pursuant to 28 U.S.C. § 1331.

Although not specifically stated at that time, the scope of the action under § 1331 is governed by § 702 of the APA, as set forth *supra.*

■ Also discussed in the Memorandum of November 28, 1980, is the issue of mandamus jurisdiction in this action, under the standard set forth in *Cook v. Arentzen,* 582 F.2d 870 (4th Cir. 1978). As stated in *Cook,* in order to be entitled to mandamus relief, the plaintiff must demonstrate:

"(1) that a public official has a plain duty to perform certain acts; (2) that the plaintiff has a right to have those acts performed; and (3) that there exists no other adequate remedy by which the plaintiff's rights can be vindicated."

*Cook v. Arentzen,* 582 F.2d at 876. Although it may be argued that mandamus jurisdiction exists over the present action, mandamus relief is unavailable since the plaintiff has an adequate remedy available under § 1331.

With this posture of the case in mind, the court will address the individual issues raised by the defendants which relate to the issue of subject matter jurisdiction.

*1. Mootness*

The defendants initially contend that this action must be dismissed on the ground of mootness. The substance of the defendants' argument on this point is that if the plaintiff's action is viewed as one seeking delivery of the benefit checks, such relief would now be pointless since the plaintiff is no longer able to negotiate those checks. All powers of attorney executed by servicemen for the benefit of the University expired, by their terms, one year from the date of their execution. Thus, even if the court were to order that the defendants should mail the benefit checks in question to the University, the University is no longer authorized to negotiate those checks under the original powers of attorney. Each benefit check would first have to be negotiated by the payee-serviceman. Since the University no longer has any direct legal interest in the checks, the defendants argue that plaintiff's cause of action seeking delivery of those checks is moot.

■ In response, the plaintiff argues that, by failing to mail out benefit checks as anticipated when the powers of attorney were signed, the defendants have interfered with the intentions of the parties. The plaintiff therefore argues that defendants' actions would operate to toll the limitations periods set forth in the powers of attorney. This argument, however, must fail, since the express limitations on the duration of the powers of attorney are governed by the agreements between the servicemen and the University and cannot be altered by acts of the VA. The duration of an agency depends on the express or implied agreement between the principal and the agent. Restatement (Second) of Agency § 105 (1958); 1 MLE Agents and Factors § 8. Accordingly, the VA's actions may not toll or extend an express limitation on duration set forth in these powers of attorney.[3] Under the terms of the powers of attorney, the University is no longer authorized to negotiate the checks in question.

Alternatively, the plaintiff argues that even if it may not negotiate the checks itself at this date, other relief is available through this court. Specifically, the plaintiff seeks to have the VA deliver those checks to which the University claims to have been entitled, along with the VA's most recent information regarding the current addresses of the servicemen-payees. The University also suggests other forms of equitable relief which would enable it to utilize information available to the VA in order to contact servicemen. Thus, the plaintiff argues that this case is not moot since equitable relief is available in this court.

---

**3.** The cases which plaintiff cites in support of the general proposition that courts maintain equitable powers to toll limitations periods where defendant's actions have substantially interfered with plaintiff's rights are inapposite. Those cases generally involve tolling a statute of limitations. None of these cases, however, support the proposition set forth by the plaintiff, which is to deem that the actions of the defendant may alter rights and liabilities otherwise established between the plaintiff and third parties.

■ The exercise of judicial power under Article III of the Constitution depends upon the existence of a live case or controversy. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). As noted in *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974):

> "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."

*(citing Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *SEC v. Medical Comm. for Human Rights*, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

■■ As a general rule, mere voluntary cessation of allegedly illegal conduct does not render a case moot. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Voluntary cessation of illegal conduct may render a case moot only if it can be said with assurance that there is no reasonable expectation that the conduct will be repeated. *Commonwealth of Virginia ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980). In *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), the Supreme Court recently stated the applicable principles as follows:

> "[J]urisdiction, properly acquired, may abate if the case becomes moot because—
> (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, *and*
> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.
> When *both* conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law."

(Emphasis supplied) (citations omitted). The Supreme Court has established by the above-quoted language a two-pronged test to be applied in determining whether an action is moot.

■ On the facts of the present case, it appears clear that there is no reasonable expectation that the alleged violation will recur. In examining the mootness issue, therefore, the court's focus is directed to the second prong of the Supreme Court test, *i. e.*, whether "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." In light of this standard, the court finds that the present action is not moot.

To a degree, interim events have changed the posture of this cause of action. Since the powers of attorney initially executed for the benefit of the University have now expired, the University is no longer able directly to negotiate the benefit checks in question. Certain aspects of the plaintiff's initial prayer for relief are now accordingly impracticable. This, however, cannot be equated with a finding that changed circumstances have irrevocably eradicated the effects of the alleged violation of the plaintiff's rights.

The plaintiff contends that unconstitutional acts on the part of the defendants deprived the University of its right to obtain possession of, and negotiate, benefit checks. The fact that the University is now technically unable to negotiate these checks does not eradicate the effect of this injury. This court is not powerless to structure an equitable remedy which would enable the University to obtain relief. As suggested by the plaintiff, the court may find it appropriate to award declaratory relief and to order that the VA assist the University in obtaining belated payment from servicemen. The court need not decide the precise nature of the remedy at this stage of the proceedings. At present, the court simply holds that a viable dispute still exists between the parties and the plaintiff's cause of action is not moot.

### 2. Damages

The defendants contend that they are entitled to summary judgment on the claim for damages alleged in the plaintiff's complaint. As previously stated, the plaintiff

has conceded that it does not allege any claim for damages against the defendants in their official capacities, for such a claim would come within the exclusive jurisdiction of the Court of Claims. The court need not discuss, therefore, the question of sovereign immunity which was raised by the parties, since this issue need be addressed only if the plaintiff alleged an action for damages against the defendants in their official capacities.[4]

The complaint requests damages "against the individually named defendants," which arguably could be construed as a claim for damages against the defendants in their individual capacities. As noted by the defendants, however, the plaintiff has conducted this suit as if it were proceeding against the defendants in their official capacities only,[5] and the plaintiff's motion does not press a claim against the individual defendants. The court, therefore, infers that plaintiff concedes that this suit is only brought against the defendants in their official capacities.

The only issue relating to damages which remains is whether the alternative equitable relief now sought by the plaintiff is essentially a request for damages which should be barred under the doctrine of sovereign immunity. The defendants argue that any injunctive relief requiring the VA to assist the plaintiff in locating servicemen to enable the University to negotiate benefit checks would effectively order an award of damages against the VA.

In general, a plaintiff cannot transform a claim for damages into a claim for equitable relief merely by requesting an injunction that orders the payment of money. *See Jaffe v. United States*, 592 F.2d 712, 715 (3d Cir. 1979), and cases cited therein. The relief which the plaintiff seeks in this action, however, is not the type of relief traditionally sought through an action for damages. The plaintiff seeks an order requiring that the VA utilize its records to assist the University in locating servicemen owing payments. Although this will involve an expense of funds by the VA, the relief requested is equitable in nature and is not foreclosed by the limitation of 5 U.S.C. § 702 to non-monetary relief. *Cf. Jaffe v. United States, supra* at 719. Thus, the relief sought by the plaintiff is not barred under the doctrine of sovereign immunity.

### 3. 38 U.S.C. § 211(a)

The defendants contend that 38 U.S.C. § 211(a) precludes review of portions of the plaintiff's claim. Specifically, the defendants maintain that the complaint, to the extent that it challenges the Administrator's actions with regard to individual benefit checks, involves an aggregation of individual benefit claims which this court may not properly review. Despite the appeal of the defendants' argument, the Fourth Circuit has already ruled that § 211(a) does not preclude review of the claims presented in the plaintiff's complaint. This action will therefore proceed, as previously stated, as

4. The Second Circuit has held that 5 U.S.C. § 702 does not waive the bar of sovereign immunity for nonstatutory review of agency action under 28 U.S.C. § 1331. *Estate of Watson v. Blumenthal*, 586 F.2d 925, 932 (2d Cir. 1978). This court declines to follow the rationale of the Second Circuit. Rather, this court follows those circuits which have held that Congress did intend to waive the defense of sovereign immunity for nonstatutory review under § 1331. *Sheehan v. Army and Air Force Exchange Service*, 619 F.2d 1132, 1139 (5th Cir. 1980); *Beller v. Middendorf*, 632 F.2d 788, 797 (9th Cir. 1980); *Jaffe v. United States*, 592 F.2d 712, 718–19 (3d Cir. 1979), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). Therefore, this court need not address the merits of the sovereign immunity question.

5. Defendant, Max Cleland, was not the Administrator at the VA at the relevant time. Richard Roudebush, who was the Administrator at the time the policy change was adopted, is not named as a defendant. Until oral argument on the Motion to Transfer to the Court of Claims, at which time plaintiff's counsel stated that any action for damages was against individually named defendants, the defendants were not aware that such a claim was raised and therefore had not received authorization for individual representation from the Department of Justice. Finally, the parties have not raised or argued any issues of individual defense, such as improper service, which have seemed inapplicable to date.

an action for judicial review of the Administrator's actions under § 702 of the APA.

### B. Failure to State a Claim Upon Which Relief May Be Granted

Briefly stated, the defendants contend that the plaintiff's complaint fails to state a claim upon which relief can be granted in that the VA's actions were fully consistent with the Congressional intent embodied in both the pre-amendment and post-amendment versions of 38 U.S.C. § 3101(a).

Prior to the 1976 amendment, § 3101(a) generally prohibited the assignment of VA benefits. Specifically, 38 U.S.C. § 3101(a) (1970) stated in pertinent part:

"Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

The 1976 amendment to § 3101(a) added the additional restriction, previously quoted herein, which specifically prohibited the "tuition financing arrangements."

A review of the legislative history of this 1976 amendment [6] clearly indicates that Congress intended, both before and after the enactment of this provision, to prohibit the use of "tuition financing arrangements" such as those devised by the University of Maryland.[7] *See* S.Rep.No.94–1243, 94th Cong., 2d Sess., 147–150 (1976), *reprinted in*

---

**6.** The court is cognizant of the fact that subsequent legislative observations are not conclusive since it is the intent of the Congress that enacted the statute which controls. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979). However, subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction. *Red Lion Broadcasting Co., Inc. v. Federal Communications Commission*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). In this instance, the legislative history of the 1976 amendment contains a detailed discussion of prior enforcement of § 3101(a) and, therefore, provides insight into the Congressional intent relating to the pre-amendment text of the statute.

**7.** As noted in the Senate Report, § 3101(a) had its roots in legislation dating back to 1883 which prohibited the assignment of certain benefits to creditors. The purpose of § 3101(a) is described as follows:

"The opinions of the Office of General Counsel and judicial precedents indicate that, throughout its history, section 3101 has been recognized as having a twofold purpose avoid [sic] the possibility of the Veterans' Administration (or its predecessor agency) from being placed in the position of a collection agency and prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income."

[1976] U.S.Code Cong. & Ad.News at 5369–70. Taking this policy statement into consideration, the General Counsel for the VA consistently interpreted § 3101(a) as prohibiting the assignment of benefit checks to an agent or "attorney-in-fact" until December 6, 1972. As noted in the Senate Report, at that time, "despite the longstanding prohibition against the assignment of benefits and the well established precedent prohibiting use of powers of attorney," the Administrator "abruptly and inexplicably" reversed the prior policy. At that time, the Administrator issued a decision stating in pertinent part:

"The Veterans' Administration is without authority to withhold benefit payment checks drawn in favor of its beneficiaries merely on the basis that the beneficiary has attempted to sign such benefits and is required to mail such checks to the payees' last known address on record with the VA, without regard to whatever disposition the beneficiary may make, or may have arranged for with reference to such payment." (Administrator's Decision VA No. 993).

[1976] U.S.Code Cong. & Ad.News at 5372. Based on this decision, the University instituted the tuition financing arrangements which are at issue in this case.

Despite the language of the 1972 decision of the VA Administrator, the court believes that the tuition financing arrangements were contrary to the Congressional intent embodied in the pre-amendment version of § 3101(a). In the single instance where Congress intended to allow an educational institution to receive benefit payments on behalf of a veteran, it did so through a narrowly drawn statutory exception. *See* 38 U.S.C. § 1780(d). Thus, the court believes that Congress intended to preclude this type of arrangement in the pre-amendment version of § 3101(a), although it did not specifically do so prior to the 1976 amendment.

[1976] U.S.Code Cong. & Ad.News 5241, 5369–72. However, a finding that Congress intended such a prohibition under the pre-amendment version of the statute does not necessarily imply that the statute accomplished that purpose. Rather, Congress' actions in amending § 3101(a) indicate a tacit recognition that the pre-amendment version failed to accomplish completely the original intent of Congress under this statute.

Prior to 1976, § 3101(a) generally prohibited the assignment of benefits. Although "tuition financing arrangements" have the same net effect as an assignment, arguably they are distinguishable from an actual assignment. It seems clear that until 1972 the VA believed such arrangements were contrary to the Congressional intent expressed in § 3101(a). However, as the 1972 VA decision points out, the pre-amendment version of § 3101(a) did not expressly prohibit such arrangements. Congress amended § 3101(a) in 1976 to close this loophole.

■ The amendment to § 3101(a) was approved by Congress as part of a comprehensive scheme of amendments to Title 38 entitled the Veterans' Education and Employment Assistance Act of 1976. When this Act was approved by Congress on October 15, 1976, it contained separate effective dates for various provisions of the amendments. Certain provisions were effective as of October 1, 1976. Others were effective upon enactment of the statute, and others were to become effective on December 1, 1976. Pub.L. 94–502, § 703, October 15, 1976, 90 Stat. 2406. The amendment to § 3101(a) was one of those provisions which became effective on December 1, 1976. The court finds that this delayed effective date evidences a recognition by Congress that the amendment to § 3101(a) changed the existing law. The amendment closed the loophole in the existing statute by deeming "tuition financing arrangements" to constitute assignments of benefits, which were therefore prohibited. If the amendment merely clarified existing law, there would

be no reason to delay the effective date. By delaying the effective date of the amendment, Congress recognized that the post-amendment version increased the scope of the prohibition set forth in § 3101(a). The overall effect of the 1976 amendment was to conform the law with the original intent of Congress to prohibit any manner of assignment of VA benefits. This was accomplished, however, by expanding the reach of the express language of the statute. The court holds, therefore, that "tuition financing arrangements" were not prohibited under the pre-amendment version of § 3101(a).[8] The 1976 amendment to the statute brought these arrangements within the reach of activities prohibited under § 3101(a).

Although the legislative history does not discuss this point, the court believes that Congress delayed the effective date of the amendment to § 3101(a), in part, to allow the University, and others similarly situated, to continue to operate under existing policies for a brief period. The VA was therefore not prohibited from mailing benefit checks to the University until the December 1, 1976 effective date of the amendment. By enacting a delayed effective date, the court believes that Congress intended that such checks be mailed by the VA, in accordance with its usual practice, so that they could be negotiated by the educational institutions prior to the effective date of the amendment. This conclusion is supported by the nature of the subsequent remedial legislation enacted by Congress.

On November 23, 1977, Congress passed legislation to enable the Administrator of the VA to award equitable relief under § 3101(a). Although there is a dearth of legislative history regarding this provision, it would appear that Congress intended to alleviate the adverse impact which the amendment to § 3101(a) would have on various educational institutions. The authorization for equitable relief, however, was strictly limited to those situations

---

**8.** *Contra, American Training Service, Inc. v. Veterans Administration*, 434 F.Supp. 988 (D.N.J.1977).

where the educational institution "ha[d] in its possession veterans' or eligible persons' benefit checks . . . ." Pub.L. 95–202, § 305(c)(1)(A), November 23, 1977, 91 Stat. 1444. *See* S.Rep.No. 95–468, 95th Cong., 1st Sess., 115 (1977), *reprinted in* [1977] U.S. Code Cong. & Ad.News 3747, 3851.

The limited nature of the equitable relief awarded by Congress in 1977 supports the conclusion that Congress intended that the VA continue to allow institutions to receive and negotiate checks up until the December 1, 1976 effective date of the amendment. Those checks already in the possession of an institution as of the October 15, 1976 date of the enactment of the amendment presumably would have been negotiated by the institution prior to December 1, 1976. However, as to checks mailed during the interim prior to the effective date, certain of those checks may not have been received by the institution in time to be negotiated prior to December 1, 1976. The 1977 remedial legislation appears to have been narrowly drafted to address such a situation.

■ In summary, the court finds that Congress expanded the coverage of § 3101(a) in its 1976 amendment to the statute. Congress recognized the potential impact of this change and therefore delayed the effective date of the amendment to allow institutions to continue to receive and negotiate benefit checks up until December 1, 1976. Congress later enacted remedial legislation to allow limited negotiation of benefit checks after December 1, 1976.

In applying these findings to the facts of the present case, the court concludes that the University's complaint states a claim upon which relief can be granted as to that period from October 15, 1976 until December 1, 1976. The University's claim during this time period is limited to the issue of whether the VA acted beyond the scope of its powers in failing or refusing to mail benefit checks to the University in a timely fashion. Failure by the VA to mail checks to the University during this period would defeat Congress' intent in delaying the effective date of the amendment. Thus, the plaintiff's claim will be allowed to go forward on this issue.

The scope of this court's review under the APA of the informal agency action involved on this issue is modest. *See FCC v. National Citizens Commission for Broadcasting,* 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978). In general terms, this court should consider three factors: (1) whether the federal defendants acted within the scope of their authority; (2) whether they followed the necessary procedural requirements in reaching their decision; and (3) whether the decisions reached were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See, e. g., Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413–17, 91 S.Ct. 814, 822–824, 28 L.Ed.2d 136 (1971); *Appalacian Power Co. v. Train,* 545 F.2d 1351, 1356 (4th Cir. 1976).

■ Judicial review of informal agency action is restricted to an examination of the administrative record, and the court is not to conduct a *de novo* review. *See Humana of Virginia v. Blue Cross of Virginia,* 622 F.2d 76, 79 (4th Cir. 1980); 5 B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 51.04 (1981). A *de novo* review "is appropriate only when there are inadequate factfinding procedures in an adjudicative proceeding, or where judicial proceedings are brought to enforce certain administrative actions." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973), *citing Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823. Since neither of these situations are present in this case "the focal point for judicial review [is] the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. at 142, 93 S.Ct. at 1244. *See Fayetteville Area Chamber of Commerce v. Volpe,* 515 F.2d 1021, 1024 (4th Cir.), *cert. den.,* 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 140 (1975). The basis of and the reasons for the federal defendants' actions must be adequately reflected in the administrative record; this court cannot sustain agency action based on *post hoc* rationales. *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,*

419 U.S. 281, 285–86, 95 S.Ct. 438, 441–442, 42 L.Ed.2d 447 (1974); *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 249, 92 S.Ct. 898, 907, 31 L.Ed.2d 170 (1972); *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). Nevertheless, if the record produced by the agency proves to be inadequate the court may consider matters outside of the record, such as affidavits or testimony by agency officials, in order to determine whether the agency considered the relevant factors and acted within the scope of its authority. *See, e. g., Camp v. Pitts*, 411 U.S. at 143, 93 S.Ct. at 1244; *Overton Park*, 401 U.S. at 420, 91 S.Ct. at 825; *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980); *National Center for Preservation Law v. Landrieu*, 496 F.Supp. 716, 724 (D.S.C.1980), *aff'd*, 635 F.2d 324 (4th Cir. 1980). However, unless there is a "strong showing of bad faith or improper behavior," neither the court nor the plaintiff can inquire into the mental processes of the decision maker. *See, e. g., Overton Park*, 401 U.S. at 420, 91 S.Ct. at 825; *National Nutritional Foods Association v. Mathews*, 557 F.2d 325, 331–33 (2d Cir. 1977).

As to the period subsequent to December 1, 1976, the University argues that the VA should be equitably estopped from refusing to mail checks to the University relating to pre-December 1, 1976 powers of attorney. The plaintiff contends that it entered into the tuition financing arrangements in justified reliance on representations by the VA that these arrangements would be condoned. The plaintiff claims that the VA should be estopped from reversing its stated policy.

Although various courts have held that the doctrine of equitable estoppel may be applied against the government,[9] the question has never been addressed squarely by the Supreme Court. Recently, in *Schweiker v. Hansen*, —— U.S. ——, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), the Supreme Court stated:

"This Court has never decided what type of conduct by a government employee will estop the government from insisting upon compliance with valid regulations governing the distribution of welfare benefits."

The Supreme Court noted, however, its prior statement in *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), regarding "the duty of all courts to observe the conditions defined by Congress for charging the public treasury."

In this instance, effective December 1, 1976, Congress specifically prohibited the VA from forwarding benefit checks directly to an institution. The doctrine of equitable estoppel may not be applied by the courts to order the VA to perform an act expressly prohibited by Congress. The court concludes that the plaintiff's complaint fails to state a claim upon which relief can be granted as to benefit checks properly issued subsequent to December 1, 1976.

### III. Conclusion

Accordingly, it is ORDERED, this 2nd day of June, 1981, by the United States District Court for the District of Maryland, as follows:

1. Defendants' Motion for Summary Judgment is DENIED.

2. The VA shall file an administrative record in accordance with the directions set forth in this opinion.

3. The scheduling order previously entered in this case is modified as follows:

(a) The administrative record shall be filed by July 2, 1981.

(b) The parties shall file cross motions for summary judgment within thirty (30) days of the date of filing of the administrative record.

(c) A hearing on motions for summary judgment shall be held on Friday, October 9, 1981, at 9:30 a. m.

---

9. *See, e. g., United States v. Lazy FC Ranch*, 481 F.2d 985, 990 (9th Cir. 1973); *Walsonavich v. United States*, 335 F.2d 96, 100–01 (3d Cir. 1964); *United States v. Fox Lake State Bank*, 366 F.2d 962 (7th Cir. 1966); *United States v. Georgia Pacific Co.*, 421 F.2d 92 (9th Cir. 1970).