NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs,

v.

Cecil D. ANDRUS et al., Defendants,

Pacific Legal Foundation et al., Defendants-Intervenors.

Civ. A. No. 1983–73.

United States District Court, District of Columbia.

April 14, 1978.

John Roger Beers, NRDC, Palo Alto, Cal., for plaintiffs.

William M. Cohen, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on the federal defendants' notice of proposed deviation from this court's Final Judgment on June 18, 1975. That judgment established a schedule pursuant to which the Bureau of Land Management (BLM) of the Department of Interior was required to prepare environmental impact statements (EIS's) under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.* concerning livestock grazing on pub-

lic lands in eleven western states. The plaintiffs have accurately summarized the history of this case as follows:

That schedule provided, *inter alia*, for the completion of one EIS to serve as the model for subsequent statements by the end of Fiscal Year 1976, and for the completion of 10 additional EIS's by the end of Fiscal Year 1977.

Despite the passage of more than three years since this court issued its opinion, the BLM has so far failed to complete a single, adequate EIS concerning livestock grazing. Although it asked for, and received two extensions of time in which to prepare the model statement on livestock grazing in the Challis, Idaho Planning Unit, the final version of that EIS is conceded by it to be inadequate. In addition, none of the EIS's scheduled for completion in Fiscal Year 1977 were issued.

On September 1, 1977, the BLM filed herein its third Notice of Proposed deviation from Scheduled Preparation of Environmental Impact Statements on Livestock Grazing . . . . That document requests this court's approval of a comprehensive revision of the current schedule for EIS preparation. The new schedule, if approved, will delay the completion of EIS's on the majority of the Public Lands, and the identification of needed changes in current management practices for a substantial period of time.

Plaintiffs' Summary of the Evidence, at 2–3 (citations and footnotes omitted). Plaintiffs oppose the BLM's proposed deviation and ask this court to reject the proposed schedule and to order BLM to adhere to the existing schedule with modifications to reflect BLM's failure to complete any EIS's in 1977 and a reduction in the number of EIS's to be prepared because of consolidation of areas under an agreement with the plaintiffs. The plaintiffs also have asked this court to specifically set forth the content requirements of NEPA to be met in the statements.

The current schedule calls for completion of 70 EIS's covering approximately 104,-000,000 acres of land (roughly ⅔ of the total) by Fiscal Year (FY) 1981, with completion of another 142 statements by FY 1988 to complete the task. The proposed schedule provides for completion of 45 EIS's covering approximately 54,000,000 acres of land (roughly ⅓ of the total) by the end of FY 1981. Thus, the federal defendants are attempting to reduce, by approximately one-half, the amount of land to be covered by EIS's to be completed by the end of FY 1981. Under the proposed schedule the balance of the EIS's will still be completed by FY 1988.

On December 30, 1974, this court held that NEPA required the BLM to prepare environmental impact statements which analyze the effects of existing and proposed livestock grazing on the resources of specific areas of the public lands. *NRDC, Inc. v. Morton*, 388 F.Supp. 829 (D.D.C.1974), aff'd, 174 U.S.App.D.C. 77, 527 F.2d 1386 (1975), *cert. denied*, 427 U.S. 913, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976). In reaching this conclusion, the court stated that "grazing clearly may have a severe impact on local environments" and noted that "damage . . . has occurred . . . from overgrazing and improper land management." 388 F.Supp. at 834. Furthermore, in 1975 this court observed that:

Over the past four years the BLM has shown relatively slow progress in implementing a thorough management planning system which would assist in protecting the environment. . . . Thus, in a substantial sense there is a serious threat of injury to the public lands which lends urgency to plaintiff's claims.

388 F.Supp. at 836. In its opinion this court cited the findings of the Council on Environmental Quality (CEQ), in its first annual report in 1970, that much of the public lands were "in desperate condition." 388 F.Supp. at 840; *see* CEQ, Environmental Quality 182 (1970). The court noted that the situation had not been rectified as of December, 1974. In a Report to the Congress on July 5, 1977, the Comptroller General of the United States found continuing deterioration of the public rangelands and recommended better management by the

BLM. This deterioration has continued while the federal defendants have failed to meet every deadline thus far imposed by this court's Final Judgment of June 18, 1975.

On January 13, 1978 the court held an evidentiary hearing on the federal defendants' proposed deviation. After that hearing the parties submitted memoranda summarizing the evidence and the legal issues, as well as proposed orders. The thrust of the federal defendants' argument in support of its proposed deviation is that the existing schedule is unreasonable and unworkable because existing resource data concerning the lands is insufficient and additional time is necessary to gather new information. Furthermore, the federal defendants assert that cost and time considerations necessitate the requested modifications. Plaintiffs' position, to briefly summarize, is that the existing schedule, which was an agreement drafted by the parties and entered by this court with their consent, was a reasonable compromise and can be met with less drastic revisions than those proposed by the federal defendants. Plaintiffs contend that the reasons advanced by the BLM for the requested delay are insufficient, that the delays up to this point are the result of mismanagement by the BLM in preparation of the EIS's, and that even assuming that additional data and planning are necessary, the EIS's could be prepared more rapidly than proposed.

BLM argues that federal agencies, not courts or plaintiffs in environmental lawsuits, are responsible for deciding the timing of the preparation of EIS's. This argument, however, neglects the fact that preparation of these statements was ordered by this court and the schedule negotiated by the parties was entered as a final judgment in a civil action. This is not a matter of first impression before the court on review of an administrative determination. The defendants are seeking to modify a final judgment of this court.

In regard to the reasonableness of the existing schedule, two factors are crucial to any determination made by this court.

First, in 1974 this court found that "it is clear that the BLM has delayed beyond reason" in the preparation of EIS's. 388 F.Supp. at 836. Second, as was indicated above, due to BLM's failures, the public lands are continuing to deteriorate. Despite these findings, the BLM now seeks to totally reorganize the EIS preparation schedule and reduce, by approximately one-half, the amount of acreage to be covered by EIS's to be completed by the end of FY 1981.

In support of their proposed schedule, the federal defendants assert that the additional time is necessary in order to integrate the preparation of livestock grazing EIS's into the BLM land use planning process and to collect additional resource information. To the extent that the failure to grant defendants' request will interfere with BLM's long-term, land use planning process, the interference must be balanced against the need for BLM to act quickly to abate the deterioration of the rangelands. As to the data deficiency issue, it is not clear that additional time is necessary for the collection of resource information. Plaintiffs persuasively suggest that effective EIS's can be prepared based on existing data and to the extent necessary, additional data can be collected and the statements prepared in less time than that requested by the BLM.

The BLM also asserts that it lacks the time, money, and manpower to meet the existing schedule. Plaintiffs have shown, however, that despite the fact that the BLM has expended substantial sums of money and manpower up to now, there has been "an outstanding want of coordination and lack of progress toward completion of the required FY 77 EIS's." Plaintiffs' Summary of the Evidence, at 7–9. Furthermore, this court noted in 1974 that:

> The court is aware that, like many agencies, the BLM has been given large scale tasks to be accomplished with limited manpower. That does not mean, however, that the agency may ignore or pay mere lip service to the NEPA requirements.

388 F.Supp. at 840–41. Simply stated, with this court's stimulation, the BLM must work to achieve all that it hoped to accomplish under the revised schedule in less time. *See NRDC v. Train,* 166 U.S.App. D.C. 312, 332, 510 F.2d 692, 712 (1974). The court will, however, give the defendants some relief from the schedule.

Plaintiffs' proposed amended final judgment appears to be a reasonable accommodation which grants the BLM additional time without completely shifting the bulk of the EIS's to the end of the schedule. Plaintiffs propose that: (1) in fiscal years 1978 and 1979, EIS's shall be prepared as specified by the federal defendants in Exhibit A to their notice of proposed deviation; (2) in fiscal years 1980 through 1982, the federal defendants shall prepare EIS's on public land acreages which total the respective, yearly acreages in the current EIS schedule for fiscal years 1979 through 1981; and (3) during fiscal years 1983 through and including 1988, all of the EIS's remaining to be prepared shall be completed at a yearly rate of at least 14% of the total.

One additional issue remains. In their proposed amended judgment, plaintiffs seek to have this court impose specific substantive standards to be met in the preparation of the EIS's. Plaintiffs contend that the admitted inadequacy of the Challis EIS, which was to serve as a model EIS under the original judgment, necessitates the imposition of standards. The Challis EIS is the only statement to be "completed" at this time and when it was filed it contained a "Note to Reviewers" stating that it will be supplemented and that no action will be taken based on it until it is supplemented. Filing incomplete statements to be supplemented later is a practice to be avoided. W. Rodgers, *Environmental Law* § 7.7, at 774 (1977). Although the Challis EIS is clearly another BLM failure, it would not be appropriate for this court to become involved in establishing content requirements for the EIS's.

■ This matter is presently before the court on the federal defendants' notice of proposed deviation from this court's final judgment. The only issues before the court are scheduling matters. Review of the adequacy of the statements should be properly left to separate actions when the statements are completed and final. *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 2730, 49 L.Ed.2d 576 (1976); W. Rodgers, *Environmental Law* § 7.9, at 791 (1977). Even the Challis statement is not final at this point because the BLM is supplementing it and no action will be taken based on the EIS until it is supplemented, but the court will order that it be supplemented by the end of FY 1978 and plaintiffs may seek judicial review of the adequacy of its content in a separate action when it is supplemented. In the absence of final agency action on the EIS's, this court lacks jurisdiction to determine the content necessary for the EIS's to be in compliance with NEPA. *Kleppe v. Sierra Club, supra,* 96 S.Ct. at 2730; *see Eccles v. Peoples Bank,* 333 U.S. 426, 434, 68 S.Ct. 641, 92 L.Ed. 784 (1948); *Coalition for Safe Nuclear Power v. A. E. C.,* 150 U.S.App.D.C. 118, 119, 463 F.2d 954, 955 (1972); *Lee v. Resor,* 348 F.Supp. 389, 396 n.27 (M.D.Fla.1972). Therefore, the court will not include the provisions proposed by the plaintiffs concerning the content of the statements to be prepared in the amended final judgment.

■ Finally, defendants-intervenors Pacific Legal Foundation and Public Lands Council, Inc. requested that this court call a meeting of all parties and expert witnesses for the purpose of discussing an agreement as to standards for the EIS's. Defendants-intervenors shared plaintiffs' and this court's concern over the possible delay in the preparation of EIS's under the federal defendants' proposed deviation. Therefore, they joined in plaintiffs' request that the court require that the BLM comply with a realistic schedule. Defendants-intervenors opposed, however, plaintiffs' attempt to establish guidelines concerning the content of the EIS's. Instead, defendants-intervenors suggested that the court call a meeting of all the parties and various experts for the purpose of discussing and reaching an

agreement on the content of the statements. Because the court has determined that any action by this court concerning standards as to the content of the statements would be premature at this point, the court will deny defendants-intervenors' request for a meeting. The court will, however, recommend that the BLM receive input from the plaintiffs, defendants-intervenors, and other experts on the question of the content of the EIS's. Furthermore, the BLM also should seek recommendations from these groups concerning improvements in the BLM's EIS preparation process.

## ORDER

Therefore, in accordance with the memorandum above, it is, by this court, this 14th day of April, 1978,

ORDERED that the Amended Final Judgment accompanying this Memorandum and Order be entered and amend and supersede this court's Final Judgment of June 18, 1975.