COMMITTEE AGAINST RAILROAD RELOCATION, An Unincorporated Association, by its Executive Officers, D. E. Stratton, Chairman, and Albert Aureli, Secretary, on Behalf of All Members of the Association

v.

Brock ADAMS, Secretary of Transportation, United States Department of Transportation, Federal Highway Administration, and Arkansas Highway and Transportation Department.

No. PB–C–78–225.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

April 24, 1979.

Phillip Deisch, Bob Scott, Bruno, Sarver & Scott, Little Rock, Ark., for plaintiff.

John L. Munday, Staff Atty., State Highway, Little Rock, Ark., Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

The plaintiff, Committee Against Railroad Relocation, is an unincorporated association, which through its executive officers brings this proceeding against the named defendants requesting injunctive relief and a judgment which declares the legal rights of the parties under the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202.

The defendants are Brock Adams, Secretary of Transportation, United States Department of Transportation, Federal Highway Administration (FHWA), and the Arkansas Highway and Transportation Department. Said defendants jointly prepared the *draft* Environmental Impact Statement (EIS) for the Pine Bluff Railroad Demonstration Project. Congress authorized the funding under § 140(a) of the Federal Aid Highway Act of 1976. Pub.L.No.94–280, 90 Stat. 425, amending § 163 of the Federal Aid Highway Act of 1973, Pub.L. No.93–87, 87 Stat. 250.

According to the *draft* environmental impact statement, the project has been undertaken "for the purpose of eliminating existing railroad community conflicts and to improve the transportation network of the area through rail systems improvements." The historic development of the urban area of Pine Bluff around the railroads has resulted in at-grade railroad operations within the intensely developed urban area of Pine Bluff. These at-grade railroad operations are said to pose significant problems for Pine Bluff and the railroads, namely, incompatability in land uses, daily vehicular and rail delays, danger to community safety of hazardous material transported through the city, hampering of rail operations and intermodal transfer, and the restricting of possibilities for future growth of the community and the railroads. Two basic improvement concepts are identified by the draft environmental impact statement:

(1) Relocation of mainline railroad tracks outside the city, leaving track facilities in the city necessary to serve existing industry; and

(2) consolidation of existing rail facilities along a single railroad right-of-way in downtown Pine Bluff with grade separations at major cross streets.

Six relocation alternates and three consolidation alternates are identified in the *draft* environmental impact statement.

The plaintiff contends and requests this Court to declare that the *draft* environmental impact statement submitted by the defendants with reference to the Pine Bluff Railroad Demonstration Project is insufficient, inadequate and violative of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347.

The Federal defendants and the State defendants each have filed separate (almost identical) motions to dismiss pursuant to Rule 12(b) Fed.R.Civ.P. on the grounds that the complaint fails to state a claim upon which relief can be granted.

The gist of the defendants' argument is that there has been no final agency action taken under NEPA or any other Federal statute and consequently the action has been prematurely filed and no case or controversy exists at this time.

The record reflects the Federal defendants have not approved the project in question nor have they granted their approval for the acquisition of right-of-way or any other act which would affect the physical surroundings of the Pine Bluff area at issue. In fact, when a project is classified as a "major action," such as this one is, FHWA is precluded by its own regulations from taking any such action with regard to a proposed project until after a *final* EIS has been approved and made available to the public. 23 C.F.R. 771.5(e) (1978).

The only significant Federal approval actions taken to date with regard to this project are (1) the decision to make Federal funds available for preliminary engineering studies, including an evaluation of the potential social, economic and environmental consequences of various alternative courses of action, and (2) Federal approval of a *draft* EIS for the Pine Bluff proposal.

Agency regulations provide for a *draft* EIS to be prepared by the State highway agency in consultation with FHWA for all proposals for major Federal action which are anticipated to have a significant effect on the quality of the human environment. 23 C.F.R. 771.12 (1978). Circulation of the *draft* EIS affords the public and governmental agencies an opportunity to express their views on the anticipated environmental impact should the proposed action be implemented. A *draft* EIS for the subject project was approved for circulation by the FHWA on May 12, 1978 and was made available for review, *inter alia*, at a public hearing held by the Arkansas Highway and Transportation Department on June 22, 1978. No *final* EIS has been prepared at this time.

■ Prior to final agency action, agency orders are not reviewable. 5 U.S.C. §§ 702, 704 (1970). Where an agency is studying whether or not to take action, the matter is not yet ripe for judicial intervention. *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426, 434, 68 S.Ct. 641, 646, 92 L.Ed. 784 (1948).

■ The Federal defendants have primary jurisdiction with regard to the review of proposed federal-aid projects. The Secretary must be given the opportunity to complete his task; and it would be improper for the Court at this time to interfere with the Secretary's administrative duties. *Whitney National Bank v. Bank of New Orleans and Trust Co.*, 379 U.S. 411, 421–422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965).

■ Section 102(2)(C) of NEPA requires agencies of the Federal government to include a "detailed statement" (covering, *inter alia*, the environmental impact of the proposed action) in every recommendation or report on proposals for major federal actions significantly affecting the quality of the human environment and to assure that this statement accompanies the proposal through the existing agency review process. 42 U.S.C. § 4332(2)(C). This detailed statement is the *final* EIS. *Aberdeen and Rockfish R. R. Co. v. Students Challenging Regulatory Agency Procedures*, 422 U.S. 289, 320, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975). The *draft* EIS is the medium by which the comments of other governmental officials and the public are obtained prior to preparation of a *final* EIS.

In the case of *Natural Resources Defense Council, Inc. v. Andrus*, 448 F.Supp. 802, 806 (D.D.C.1978) the Court stated:

In the absence of final agency action on the EIS's, this court lacks jurisdiction to determine the content necessary for the EIS's to be in compliance with NEPA. (citations following)

The Supreme Court, in discussing the limited role of the courts in reviewing agency compliance with NEPA, stated:

This is not to say that § 102(2)(C) imposes no duties upon an agency prior to its making a report or recommendation on [a] proposal for action. Th[e] section states that prior to preparing the impact statement the responsible official 'shall consult with and obtain the comments of

any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved.' Thus, the section contemplates a consideration of environmental factors by agencies during the evolution of a report or recommendation on a proposal. *But the time at which a court enters the process is when the report or recommendation on the proposal is made, and someone protests either the absence or the adequacy of the final impact statement.* This is the point at which an agency's action has reached sufficient maturity to assure that judicial intervention will not hazard unnecessary disruption.

*Kleppe v. Sierra Club,* 427 U.S. 390, 406, n. 15, 96 S.Ct. 2718, 2728, n. 15, 49 L.Ed.2d 576 (1976). (emphasis supplied)

It is thus well established that *draft* EIS's are not subject to judicial review.

Until the Federal defendants have exercised their discretion in approving or not approving a project or performed some act that could affect the impact area, there is no basis on which to predicate judicial review. See *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 411–418, 91 S.Ct. 814, 820–24, 28 L.Ed.2d 136 (1971); *Camp v. Pitts,* 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Until the defendants have made their assessment and determination no injunction should be issued. *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 162–63, 87 S.Ct. 1520, 1523–24, 18 L.Ed.2d 697 (1967).

The Supreme Court, in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), considered the scope of judicial review when agency procedures were sought to be preempted. In *Vermont Yankee* the Court cautioned "reviewing courts against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." 435 U.S. at 525, 98 S.Ct. at 1202.

Many procedures still remain to be completed prior to any Federal authorization to proceed with either land acquisition or construction activities. Some of these are:

(1) Preparation of a final EIS by the Arkansas Highway and Transportation Department in conjunction with the FHWA,

(2) Approval of the final EIS by the Federal defendants together with satisfaction of all other applicable environmental requirements,

(3) Release of the final EIS to the public and filing with the Environmental Protection Agency (EPA),

(4) Holding of additional public hearings required by State and/or Federal procedures,

(5) Acceptance of public hearing transcripts by the Federal defendants,

(6) Authorization to proceed with detailed design work,

(7) Approval of the proposed design for the project by the Federal defendants,

(8) Approval of a relocation plan by the Federal defendants, and

(9) Approval of plans, specifications and estimates by the Federal defendants pursuant to 23 U.S.C. § 106(a).

As plaintiff has alleged, the *draft* EIS identified two basic concepts—relocation of the railroad tracks outside the city and consolidation of existing rail facilities along a single right-of-way in downtown Pine Bluff. The *draft* EIS identified six relocation alternatives and three consolidation alternatives. The *draft* EIS does not identify a preferred alternative because FHWA regulations require (1) the *draft* EIS to indicate that a specific alternative will be selected *after* the *draft* is circulated for comment and a public hearing is held and (2) a *final* EIS is then prepared for the selected alternative. 23 C.F.R. 771.18(j)(3) (1978).

■ Plaintiff cannot establish that a specific injury will result to the organization or to its members from defendants' actions with respect to the project until the *final* EIS draft is complete, approved and filed with EPA. When a plaintiff's rights have not been invaded or threatened with invasion, no justiciable issue yet exists and such a complaint must be dismissed for want of a case or controversy. *United States v. Richardson,* 418 U.S. 166, 179–80, 94 S.Ct. 2940,

41 L.Ed.2d 678 (1974); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The United States Supreme Court has stated that the essence of the case or controversy requirement is a requirement of "injury in fact." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

Because defendants have neither completed the procedures mandated by NEPA nor reached a final decision as to the specific means of implementing the proposed project, no justiciable case or controversy exists.

Accordingly, this Court finds plaintiff improperly seeks at this time to invoke jurisdiction of the district court to grant declaratory and injunctive relief based on alleged inadequacies in the *draft* EIS. Any such relief would necessarily constitute an advisory opinion as to prospective actions to be taken by defendants.

For the foregoing reasons an order will be entered denying the request for injunctive relief and dismissing the action[1] as to all named defendants.[2]

---

1. This dismissal does not preclude plaintiff from filing an action concerning the Pine Bluff Project at the appropriate time if the facts warrant such proceeding.

2. Other motions have been filed in this cause by the parties, but the action taken herein renders those motions moot.